Argued and submitted November 16, 1983, affirmed April 18, reconsideration denied
June 29, petition for review denied August 21, 1984 (297 Or 601)

# FLOWERS,
## *Appellant,*

*v.*

# BANK OF AMERICA NATIONAL TRUST
# AND SAVINGS ASSOCIATION et al,
## *Respondents.*

## (A8201 00196; CA A26738)

679 P2d 1385

·Carlton W. Hodges, Portland, argued the cause and filed the briefs for appellant.

Timothy N. Brittle, Portland, argued the cause for respondents Chen Holding Co., Esther Chang, and James Ping Tsui, dba Uncle Chen's. With him on the brief were Acker, Underwood & Smith, Portland.

Jeffery M. Batchelor, Portland, argued the cause for respondent Bank of America National Trust and Savings Association. With him on the brief were Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

.

**NEWMAN, J.**

Plaintiff appeals from a judgment that dismissed his complaint for failure to state a claim. ORCP 21A(8). He alleges that defendant Bank of America (Bank) negligently caused him emotional distress and that both Bank and the defendants doing a restaurant business as Chen's Restaurant (Chen) intentionally caused him emotional distress and invaded his privacy. We affirm.

Plaintiff alleges: Bank issued its Visa credit card to Cunico Corporation and agreed to extend credit when an authorized user presented the card to a participating merchant for payment for goods and services; plaintiff was president of Cunico and an authorized user; Chen was a participating merchant; Bank miscalculated and misinterpreted "plaintiff's" payment record and negligently notified Chen that the credit card was cancelled and should not be honored; Bank failed to take reasonable steps to insure that it would not communicate such erroneous information; plaintiff and three of his guests dined at Chen and plaintiff presented the credit card to pay for the meals; Chen, acting on the information Bank had furnished to it, refused to honor the card; and as a result plaintiff suffered severe mental and emotional distress.

Plaintiff's second claim was that both Bank's and Chen's conduct was outrageous in the extreme because they deliberately, recklessly and wantonly confiscated the card in the presence of plaintiff's guests and other patrons of the restaurant, refused his reasonable request to make further inquiry as to the card's validity, refused to discuss the matter with him, demanded and received cash payment for the meal, called the police and caused them to remove plaintiff from the restaurant. He asked for general and punitive damages. Neither claim alleges actual or threatened physical harm.

The Oregon Supreme Court has stated:

"* * * This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship, or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently. The court has found infringements of legal rights in an invasion of privacy, *Hinish [v.*

*Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941)], in the negligent removal of the remains of a deceased spouse, *Hovis [v. City of Burns,* 243 Or 607, 415 P2d 29 (1966)], and in the negligent delivery of a passport that allowed plaintiff's child to be taken from this country, *McEvoy [v. Helikson,* 277 Or 781, 562 P2d 540 (1977)]. But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 558, 652 P2d 318 (1982). (Footnotes omitted.)

In *Meyer v. 4-D Insulation Co., Inc.,* 60 Or App 70, 652 P2d 852 (1982), we analyzed cases of liability for mental distress in the absence of physical injury:

"These cases can be grouped into four main categories, although they cannot be said to form a definite pattern: (1) certain intentional torts, including trespass to land * * * intentional interference with contractual relations * * * racial discrimination; (2) private nuisance * * *; (3) invasion of privacy * * *; (4) miscellaneous cases: unlawful disinterment of spouse's remains * * * infringement of right to child custody resulting from attorney's failure to deliver client's passport into 'escrow' to prevent client from taking child out of the country." 60 Or App at 73.

Here, plaintiff's first claim is not for an intentional tort, a private nuisance or an invasion of privacy. The interest that Bank allegedly carelessly invaded was plaintiff's contractual right to have the credit card honored. The question is whether that careless invasion is, as a matter of policy, of sufficient importance to merit protection by an award of damages if the only result is emotional distress. We hold that it is not. *See Meyer v. 4-D Insulation Co., Inc., supra,* 60 Or App at 74. The court did not err in dismissing plaintiff's first claim against Bank.

▆▆▆▆ Bank and Chen can be liable for intentional infliction of emotional distress or "outrageous conduct" if they (1) intended to inflict emotional distress, *Hall v. The May Dept. Stores,* 292 Or 131, 135, 637 P2d 126 (1981); (2) caused "mental or emotional distress of a severe and serious kind," *Hall v. The May Dept. Stores, supra,* 292 Or at 135; and (3) "went beyond the outer limits of what a reasonable person in plaintiff's position should be expected to tolerate in an arm's

length dispute." *Brewer v. Erwin,* 287 Or 435, 458, 600 P2d 398 (1979). We find that defendant's conduct, as pleaded, did not exceed the outer limits of what a reasonable person should be expected to tolerate, and we therefore need not decide whether plaintiff's complaint adequately alleges the other required elements.

In *Hall v. The May Dept. Stores, supra,* 292 Or at 137, the court stated:

> "To put the same point another way, the law, much as in negligence cases, calls on the factfinder, jury or judge, to decide two kinds of questions. One kind concerns what the defendant did, with what intent, and to what extent his acts caused the plaintiff severe emotional distress. These are questions of historical facts. Assuming that each factual element is shown, the other .decision is whether the offensiveness of the defendant's conduct exceeds any reasonable limit of social toleration. This is a judgment of social standards rather than of specific occurrences. It is the kind of judgment for which the law does not demand the same evidentiary basis that is required for reconstructng disputed events. Despite this distinction, however, each issue is subject to judicial decision in the familiar manner when reasonable factfinders could reach only one conclusion on the evidence. As the court stated in *Pakos v. Clark,* [253 Or 113, 453 P2d 682 (1969)]:
>
>> " 'It was for the trial court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable men would not differ on the subject the court was obliged to grant an order of involuntary nonsuit, which in this case was done.' "

Words like "outrageous" and "extreme," the court said,

> "* * * are not words of art; other words or phrases could serve as well. All are designed only to express the outer end of some gradation or scale of impropriety and social disapproval. No more can be conveyed by defining one epithet by another. As the court said in *Rockhill v. Pollard,* [259 Or 54, 60, 485 P2d 28 (1971)], for the purpose of informing a trial court's exercise of its own responsibility, as in this case, the facts of the decided cases probably convey more than any battery of verbal formulas." 292 Or at 136.

In *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971), the defendant physician met the plaintiffs at his office on a

freezing winter night. The plaintiffs had been injured in an automobile accident. One, a child, was unconscious and vomiting. The defendant performed a perfunctory examination and forced the plaintiffs out of his office. In *Brewer v. Erwin, supra,* the plaintiff tenant refused to vacate the defendant landlord's property. The defendant made abusive and threatening statements, attempted to strike the plaintiff's friend with a car, partially demolished the apartment and threw garbage in the apartment's yard. In *Hall v. May Dept. Stores, supra,* the defendant's director of security summoned the plaintiff, an employe, to his office, accused her of stealing the defendant's money and threatened her with prosecution unless she confessed.

In each of those cases, the court allowed the jury to decide if the defendant's conduct exceeded the outer limits of social toleration. As pleaded, defendants' conduct here does not approach the extreme nature of the conduct in those cases and, as a matter of law, does not exceed the outer limits of what a reasonable person should be expected to tolerate. Chen had a right to rely on Bank's instruction to refuse to honor the credit card and had no duty to investigate that instruction. When plaintiff protested Chen's refusal to honor the card, it took additional steps that also were not, as a matter of law, beyond the outer limits of what a reasonable person should be expected to tolerate. Apart from realleging Bank's carelessness, as set out in the first claim, plaintiff's second claim does not allege any acts of Bank beyond what Chen allegedly did. As pleaded, Bank is not more responsible than Chen. The court did not err in dismissing plaintiff's second claim against both defendants.

Plaintiff argues that his second claim also states a claim for invasion of privacy.[1] He asserts that defendants (1) publicly disclosed embarrassing private facts about him, Restatement (Second) Torts § 652D,[2] and (2) put him in a false

---

[1] Defendants argue that, because plaintiff did not place a caption "Invasion of Privacy" on his complaint or argue that theory in the trial court, he cannot assert such a claim on appeal. We do not decide this question. *See Chaney v. Fields Chevrolet,* 264 Or 21, 27, 503 P2d 1239 (1972); ORCP 12A.

[2] Restatement (Second) Torts § 652D:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

light in the public eye. Restatement (Second) Torts § 652E.[3] We disagree.

■■　Respecting the first assertion, a plaintiff must plead that (1) the facts disclosed were private facts; (2) the defendant disclosed them to the public generally or to a large number of persons; and (3) the disclosure was in a "form of publicity of a highly objectionable kind." *Tollefson v. Price,* 247 Or 398, 401, 430 P2d 990 (1967); Restatement (Second) Torts § 652D. Plaintiff alleges that defendants confiscated the credit card "in the presence of plaintiff's guests and other patrons of the restaurant." Plaintiff fails to plead, however, what were the private facts that defendants disclosed.

■■　To plead a false light claim, a plaintiff must allege that the defendants "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) Torts § 652E; *see Lee v. Nash,* 65 Or App 538, 671 P2d 703 (1983), *rev den* 296 Or 253, 675 P2d 491 (1984). Assuming that Oregon recognizes a "false light" claim, nonetheless plaintiff does not allege that defendants knew that the credit card was valid. Moreover, Chen did not act "in reckless disregard as to the falsity" of the information that it received from Bank. As noted above, it had no duty to investigate Bank's instruction not to honor the card.

　Affirmed.

---

[3] Restatement (Second) Torts § 652E:

　"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."